Blake Goodman
Bar Number: 7436
LAW OFFICES OF BLAKE GOODMAN, PC
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 528-4274
*Attorney for Plaintiff*
*Tammy Tavares*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| TAMMY TAVARES,<br><br>     Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>     Defendant. | **Case No.: 1:21-cv-00213**<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br> 1. **FCRA, 15 USC § 1681** *et seq.* |

NOW COMES, Plaintiff Tammy Tavares ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Experian Information Solutions, Inc. ("Experian" or "Defendant").

### INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant.  Plaintiff contends the Defendant failed to follow reasonable procedures to assure **maximum** possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.  "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the District of Hawaii is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of Mililani, Honolulu County, Hawaii.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.      Defendant Experian is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 USC 1681a(d), to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.      During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Hawaii and conducted business in the State of Hawaii on a routine and systematic basis.

9.      Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.     During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.     Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

12.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.     Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer

3

credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

19.     Defendant also obtains information from other CRAs (who commonly share information).

20.     Defendant seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

21.     The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22.     Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

23.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25.     The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

26.     FICO Scores are calculated using information contained in Defendant's consumer reports.

27.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

28.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

      a.  "Payment history" refers to whether a consumer has paid her or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

      b.  The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

29.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant in consumer reports.

30.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

31.     Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

32.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

33.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

34.     Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a consumer report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero balance.

35.     Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

36.     However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

37.     Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

38.     Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant voluntarily obtained consumer bankruptcy case information.

39.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

40.     However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

41.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

42.     Defendant regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

43.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge, including failure to report the discharge.

44.     Therefore, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which often produce inaccurate balances, account, and payment statuses.

### *Allegations Specific to Credit Reporting of Plaintiff*

45.     Plaintiff's husband, who worked in construction, became ill prior to the bankruptcy and could not work as many hours, causing a dramatic drop in income, while Plaintiff continued to work in hospitality.

46.     Shortly before Plaintiff's husband qualified for total disability, the debts became insurmountable, and bankruptcy seemed to be their only option.

47.     Because most of the debts were only in Plaintiff's name, Plaintiff filed for a "no asset" Chapter 7 Bankruptcy on or about September 23, 2019 in the United States Bankruptcy Court for the District of Hawaii, petition no. 19-01219.

48.      Plaintiff received an Order of Discharge on or about December 26, 2019.

49.     Thereafter, Plaintiff was not personally liable for her dischargeable debts and these debts have a $0 balance after the bankruptcy discharge.

50.     After receiving her Order of Discharge, Plaintiff requested a consumer disclosure from the CRAs: non-parties Trans Union, LLC and Equifax Information Services, Inc.; and Defendant Experian.

51.     On or about January 6, 2021, Experian produced a copy of Plaintiff's credit file/consumer report, which Plaintiff reviewed.

52.     Defendant reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

53.     Defendant failed to report Plaintiff's consumer bankruptcy information in the Public Records section or in any individual tradelines of Plaintiff's credit reports.

54.     Notably, the other CRAs, Experian Information Solutions, Inc. and Trans Union, LLC properly reported Plaintiff's bankruptcy information in the Public Records sections of their respective reports, and in the individual tradelines of their respective reports.

55.     Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of her consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on her credit reports.

56.     Defendant also obtains information from other CRAs (who commonly share information).

57.     Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

58.     Defendant should have reported all of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero balance but did not.

59.     Defendant should not have reported any late payment history in the months after Plaintiff filed for bankruptcy.

60.     Defendant also should not have reported any "charge offs" after the bankruptcy discharge.

61.     Rather than accurately report the discharged debts, Defendant reported Plaintiff's accounts with numerous inaccuracies.

### *Inaccurate Accounts on Plaintiff's January 6, 2021 Experian Consumer Report*

62.     As a preliminary matter, Experian did not indicate that Plaintiff had filed for bankruptcy and received a discharge.

63.     The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on her Experian consumer report.

64.     Defendant Experian's failure to report Plaintiff's bankruptcy discharge even though Defendant had all the correct personal information for Plaintiff in its database, which matched the personal information reported in Plaintiff's Chapter 7 petition (e.g., full name, social security number, addresses).

65.     Notably, non-parties Trans Union and Equifax accurately reported Plaintiff's public record bankruptcy filing and discharge based on the same information.

66.     Additionally, furnishers reported the Plaintiff's discharged/zero account balances, bankruptcy and/or discharge information to Experian.

67.     Experian knew or should have known that Plaintiff's bankruptcy was discharged.

68.     Experian reported debts that were in fact discharged in bankruptcy and was therefore required to report these as discharged and/or with a zero balance. However, Experian's failure to report Plaintiff's bankruptcy, filed in September 2019 and discharged in December 2019, in her consumer report contributed to the numerous inaccuracies listed in Plaintiff's consumer report.

69.     Upon information and belief, the following furnishers of information accurately reported to Experian that Plaintiff's accounts were included in her bankruptcy discharge and/or had a zero balance after the bankruptcy filing/discharge, but Experian rejected or revoked the data furnished to it and inaccurately overrode the reporting of the accounts.

70.     On Plaintiff's consumer disclosure, Experian inaccurately reported Plaintiff's Barclays Bank Delaware account, beginning with 000232 and opened in January 2015, with an open Balance owed of $6,891, with $212 Past Due, and a 60-day late in December 2019, when the account actually has a zero balance. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

71.     Experian inaccurately reported Plaintiff's Capital One account, beginning with 41470 and opened in June 2015, with a history of late payments following Plaintiff's bankruptcy filing in September 2019 through January 2020 (after the discharge). Experian also reported in the Account History that Plaintiff owes $4,389 as of December 2019. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

72.     Experian inaccurately reported Plaintiff's CITI account, beginning with 41003 and opened in December 2013, with a history of late payments following Plaintiff's bankruptcy filing, between August 2019 through January 2020 (after the discharge). Experian also reported in the Account History that Plaintiff owes $2,169 as of September 2019. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

9

73.     Experian inaccurately reported Plaintiff's Discover Financial Services account, beginning with 60110 and opened in September 2017, with a history of late payments following Plaintiff's bankruptcy filing, between August 2019 through October 2019. Experian also reported in the Account History that Plaintiff owes $5,311 as of August 2019. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

74.     Experian inaccurately reported Plaintiff's FNB Omaha account, beginning with 30130 and opened in April 2018, with an open Balance owed of $2,852 and a history of late payments following Plaintiff's bankruptcy filing in September 2019 through January 2020 (after the discharge). Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

75.     Experian inaccurately reported Plaintiff's Hawaii State Federal Credit Union account, beginning with 9883 and opened in March 2017, with an open Balance owed of $24,439 and $692 Past Due and a 30-day lates in August and December 2019. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

76.     Experian inaccurately reported Plaintiff's JPMCB Card account starting with 42668 and opened in September 2008 with an outstanding Balance owed of $6,775 and $374 Past Due as of January 2020, the month the disclosure was filed. There was also late payment history from August 2019 through January 2020 (after the discharge). Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

77.     Experian inaccurately reported Plaintiff's JPMCB Card account starting with 42669 and opened in April 2017 with an outstanding Balance owed of $3,294 and $180 Past Due as of January 2020, the month the disclosure was filed. There was also late payment history from August 2019 through January 2020 (after the discharge). Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

78.     Experian inaccurately reported Plaintiff's Synchrony Bank/GAP Card account, starting with 44799 and opened in January 2018, as "charged off" with $2,300 written off and an Account Balance of $2,211 owed in August 2019. There were also lates reporting between August and November 2019, and

monthly charge offs reporting between December 2019 through March 2020. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

79.     Experian inaccurately reported Plaintiff's Synchrony Bank/Lowe's Card account, starting with 79826 and opened in August 2017, as "charged off" with $1,036 written off and an Account Balance of $1,036 owed in August 2019. There were also lates reporting between August and October 2019, and monthly charge offs reporting between November 2019 through February 2020. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

80.     Experian inaccurately reported Plaintiff's Verizon Wireless account, starting with 37108 and opened in October 2007, as a Collection account with a $288 Balance and Past Due owed. Experian was also reporting an updated "Collection" every month from May 2018 through December 2020 and an Account Balance of $288 owed in November 2020. Thus, Experian knows this account predated Plaintiff's bankruptcy and is discharged thereby.

81.     Experian inaccurately reported Plaintiff owed a total of nearly $60,000 of debt on the above eleven (11) accounts, when she actually did NOT owe anything.

82.     Upon information and belief, Lexis-Nexis furnished information to all three CRAs, including Defendant, that indicated Plaintiff had filed for bankruptcy and received a discharge, but Defendant rejected or otherwise failed to report the data it received.

83.     Upon information and belief, some or all of the data furnishers of the foregoing tradelines provided information to all three CRAs, including Defendant, that indicated their corresponding accounts had been discharged in bankruptcy, but Defendant rejected or otherwise overrode the data it received.

84.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but, upon information and belief, Defendant failed to review those sources or knowingly rejected them.

85.     In any event, Defendant knew or had reason to know that it reported information contradicted by notices received from third parties.

11

86.     Defendant inaccurately reported that Plaintiff owed money that she did not actually owe, and also reported inaccurate account statuses and payment histories.

87.     Defendant inaccurately reported numerous accounts with a balance owed after they were discharged in Chapter 7 Bankruptcy.

88.     Defendant failed to indicate that any of the foregoing accounts had a zero-dollar balance and were discharged in Chapter 7 Bankruptcy.

89.     Defendant also erroneously reported that the discharged accounts were charged off, late, or in collection after the discharge.

90.     Notably, Trans Union LLC and Equifax Information Services, LLC, the other two national CRAs, reported Plaintiff's accounts accurately with zero balances on consumer reports dated February 23, 2021, and January 6, 2021, respectively.

91.     Defendant's reporting of the Accounts is patently inaccurate.

92.     If not patently in accurate, Defendant's reporting of the Accounts is materially misleading.

### *Plaintiff's Damages*

93.     Upon information and belief, had Defendant accurately reported the above accounts with zero balances and/or discharged in bankruptcy, Plaintiff's credit scores and creditworthiness would have been better.

94.     Upon information and belief, all or part of Plaintiff's credit information, as it appeared in her January 6, 2021 Experian consumer disclosure, was published to third parties.

95.     After her discharge, Plaintiff applied for a Macy's/DSNB credit card and was denied due to the erroneous reporting by Experian.

96.     Plaintiff also applied for a Mission Lane credit card and was approved at less favorable terms due to the erroneous reporting by Experian than Plaintiff would have obtained had Experian reported accurately.

97.     Upon information and belief, Macy's/ DNSB and Mission Lane reviewed Plaintiff's Experian consumer report while Plaintiff was applying.

98.     Plaintiff's consumer credit file and consumer reports were also reviewed by numerous entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Experian.

99.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

100.    The anxiety from Experian reporting Plaintiff owes nearly $60,000 that she does not owe and increased the stress on her marriage after an already difficult situation following her husband's total disability and her bankruptcy. Plaintiff is unable to reestablish credit and move forward with a fresh start.

101.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

### COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

102.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

103.    The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

104.    The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

105.    Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer receives a Discharge Order.

106.    Defendant received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendant through sources of consumer information such as Lexis Nexis, Defendant's own files, and information provided by data furnishers, yet Defendant rejected that information.

107.    Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

108.    Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

109.    Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

110.    Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records and its own files, including other furnishers that report to Defendant that the consumer's bankruptcy has been discharged.

111.    In this case, the inaccurately reported debts pertain to accounts Defendant knew predated Plaintiff's Chapter 7 Bankruptcy, was included and discharged by Plaintiff's bankruptcy discharge, and should therefore have reported with a zero balance.

112.    Defendant's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the Defendant regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

113.    Defendant knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

114.    Defendant knew or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 7 Bankruptcy Discharge.

115.    Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

116.    CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

117.    Therefore, Defendant had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

118.    If Defendant contends it did not have sufficient notice, Defendant must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 7 Bankruptcy.

119.    Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

120.    In this case, Defendant knew or should have known about Plaintiff's bankruptcy filing and discharge and failed to include that information in her consumer disclosure and in consumer reports published to third parties.

121.    When Defendant received notice of Plaintiff's bankruptcy information, it had an obligation to ensure it reported her discharge and its effect(s) with maximal accuracy.

122.    Unfortunately, Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

123.    Despite knowledge of its legal obligations, Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure/ credit report.

124.    Defendant knows that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date.

125.    Yet, in this case, Defendant reported numerous accounts that predated Plaintiff's bankruptcy with a balance owed, an improper account status, and/or erroneous late payment history, after her discharge.

126.    Defendant knew or should have known the information it reported about the accounts was inaccurate.

127.    Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information Defendant is reporting is inaccurate, and/or

otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

128.    Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

129.    Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

130.    Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

131.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

132.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

133.    Defendant is a direct and proximate cause of Plaintiff's damages.

134.    Defendant Experian is a substantial factor in Plaintiff's damages.

135.    Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant Experian for the following:

(a)    Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including

any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

**JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 10th day of May 2021,

LAW OFFICES OF BLAKE GOODMAN, PC

*/s/Blake Goodman*
Blake Goodman, Bar Number: 7436
900 Fort Street Mall, #910
Honolulu, HI 96813
E: blake@debtfreehawaii.com
T: (808) 528-4274
*Attorney for Plaintiff,*
*Tammy Tavares*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2021, I electronically filed the foregoing with the Clerk of the

Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter.

*/s/Jacey Gutierrez*